**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Jenna L. Gavenman (State Bar No. 348510)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
        jgavenman@bursor.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA BACA, individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>  v.<br><br>BEAUTY BIOSCIENCES LLC, dba BEAUTYBIO,<br><br>          Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiff Linda Baca ("Plaintiff") brings this action on behalf of herself, and all others similarly situated against Beauty Biosciences, LLC ("Defendant" or "BeautyBio").  Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself and her counsel, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      This is a putative class action lawsuit on behalf of purchasers of the GloPRO Microneedling Regeneration Tool (collectively "GloPRO," "GloPRO Device," the "Device" or the "Product").  Defendant markets and sells GloPRO as a microneedling  regeneration tool capable of "stimulat[ing] skin to boost collagen production" and able to "create firmer, smoother skin in just 60 seconds a day" (the "Skin Benefit Claims")[1].  In fact, GloPRO is incapable of stimulating the layer of skin necessary to produce collagen and thus is incapable of boosting collagen production and providing these skin benefits.

2.      Microneedling is typically used as a cosmetic procedure, which entails using small needles to create microscopic wounds at specific depths in the skin to boost collagen production, thus providing skin regeneration benefits.  Microneedling addresses signs of aging like fine lines and wrinkles, reduced skin elasticity and can even diminish acne scarring.  Microneedling is minimally invasive, effective in boosting collagen production when performed correctly, and costs significantly less than other cosmetic treatments such as lasers and surgical approaches.[2]

3.      In 2022, the microneedling market size was valued at $691.27 million USD and is expected to reach $1140.39 million USD by 2028.[3]  The global anti-aging market, microneedling's

---

[1] BEAUTY BIO, *GloPRO Facial Microneedling Tool*, https://beautybio.com/products/glopro-microneedling-regeneration-roller-tool (last accessed July 27, 2023).

[2] *Microneedling Market Size, Current Insights and Demographic Trends 2023-2030*, THE EXPRESS WIRE (Jun. 15, 2023, 5:40 p.m. ET), https://www.marketwatch.com/press-release/microneedling-market-size-current-insights-and-demographic-trends-2023-2030-2023-06-15.

[3] *Id.*

1  target market, was valued at $59.6 billion USD in 2022 and is anticipated to reach $90.2 billion

2  USD in 2030.[4]

3       4.    At-home microneedling devices have grown in popularity and are viewed by

4  consumers as an accessible alternative to an in-office procedure with a dermatologist.[5] However,

5  according to the American Academy of Dermatology Association, products sold for at-home

6  microneedling are not meant to puncture the skin.[6] These at-home devices only superficially affect

7  the skin since they penetrate solely the outer layer of the dermis, reaching 0.25 mm deep.[7]

8  Professional devices can go up to 2 mm – 3 mm deep into the *epidermis*, reaching the depth

9  required for collagen production.[8] Professional devices are electric powered and evenly push the

10  microneedles into the skin, whereas at-home devices rely on the user to manually roll a needled

11  barrel over the skin to create the small punctures.[9]

12       5.    Defendant BeautyBio sells GloPRO Devices that purportedly feature microneedling

13  skin regenerative capabilities. Defendant is one of the largest manufacturers of microneedling

14  devices worldwide.[10]

15       6.    Contrary to Defendant's representations, GloPRO Devices are not, in fact, capable

16  of stimulating collagen production and thus cannot provide microneedling skin regeneration

17  benefits.

18

19  [4] VYNZ RESEARCH, *Global Anti-Aging Market – Analysis and Forecast (2023- 2030)*, (Jun. 2023), https://www.vynzresearch.com/healthcare/anti-aging-market.

20  [5] *Microneedling Market Size, Share & Trends Analysis Report By Needle Material (Silicon, Metal), By Product (Dermarollers, Dermapen), By Type (Laser, RF), By Application, By Region, And Segment Forecasts, 2021-2028*, GRAND VIEW RESEARCH, https://www.grandviewresearch.com/industry-analysis/microneedling-market-report.

22  [6] Paula Ludmann, MS, *Microneedling Can Fade Scars, Uneven Skin Tone, and More*, AMERICAN ACADEMY OF DERMATOLOGY ASSOCIATION, https://www.aad.org/public/cosmetic/scars-stretch-marks/microneedling-fade-scars (Feb. 20, 2023).

24  [7] *Microneedling*, YALE MEDICINE, https://www.yalemedicine.org/conditions/microneedling (last accessed July 10, 2023).

25  [8] *Id.*

26  [9] *Id.*

27  [10] *Microneedling Market Size, Share & Trends Analysis Report By Needle Material (Silicon, Metal), By Product (Dermarollers, Dermapen), By Type (Laser, RF), By Application, By Region, And Segment Forecasts, 2021-2028*, GRAND VIEW RESEARCH, https://www.grandviewresearch.com/industry-analysis/microneedling-market-report.

7.      As such, Defendant engaged in widespread false and deceptive advertising on its GloPRO Devices by claiming GloPRO is generally capable of providing microneedling skin regeneration benefits.  BeautyBio's website, beautybio.com, and any retailer selling Defendant's GloPRO prominently advertise the Skin Benefit Claims on the product pages for GloPRO and BeautyBio.

8.      Plaintiff and Class Members purchased defective GloPRO Devices designed, marketed, manufactured, distributed, and sold by Defendant as capable of providing microneedling skin regeneration benefits through collagen production.  Further, Plaintiff and Class Members relied to their detriment on Defendant's representation that GloPRO Devices are capable of providing microneedling skin regeneration benefits.  Plaintiff and Class Members would not have paid to purchase Defendant's GloPRO Devices–or would not have paid as much to purchase them– had they known that they are not, in fact, capable of stimulating the skin to boost collagen production and thus provide the claimed regeneration benefits for their skin.  Plaintiff and Class Members thus suffered monetary damages as a result of Defendant's deceptive and false representations and omissions.

9.      This mislabeling of the GloPRO Devices leads consumers to believe that the Devices will provide skin regeneration benefits by boosting collagen production when, in fact, the Product is incapable of providing these benefits.  Nevertheless, GloPRO Devices are labeled and sold as capable of such benefits, and they command a significant price premium over other similar devices that do not feature these benefits.  Thus, Plaintiff and Class Members have been hit with a costly double-whammy: a premium purchase for a worthless product.

## PARTIES

10.      **Plaintiff Linda Baca** is a citizen of California, residing in Gilroy, California.  On August 31, 2019, Plaintiff Baca purchased one of Defendant's GloPRO Devices for approximately $149.94, from QVC.com while she was in California.  Prior to her purchase of the Product, Plaintiff Baca watched a feature on the GloPRO Device on the Quality Value Convenience (QVC) channel, a free-to-air television network and shopping channel.  The television segment on the Device claimed the Product reduced fine lines and wrinkles and helped dry skin by allowing for

better absorption of skin products.  Plaintiff Baca was so convinced by the QVC channel Product

presentation, that she based her online purchase of the Device on the claims made in the airing.

The QVC.com Product page features a video presentation of the Device, likely the same as, if not

similar to, the presentation Plaintiff Baca watched prior to her purchase.  The QVC.com video

makes claims about the Device's ability to "mak[e] beautiful new skin" and how "nothing can firm

your skin" like the Device,[11] all allusions to skin regeneration without explicitly naming them as

collagen producing processes.  The video also provides a visual demonstration of the Device's

microneedles gliding over the skin, showing the tip of a needle penetrating what is labeled the

"epidermis."[12]  The QVC video further makes no distinction between results achieved by the body

roller with 0.5 mm needles, which are capable of producing new skin, and results achieved with the

facial attachments whose needles do not exceed 0.3 mm in length and are not capable of producing

new skin.[13]  Instead, the presentation blurs the skin rejuvenation properties of the Product with the

skin regeneration properties, which can only be achieved with the body roller.[14]  Plaintiff Baca

watched the Product's advertising and saw that the Product was purportedly capable of skin

regeneration.  Plaintiff Baca relied on that representation to choose her GloPRO Device over

comparable products and skin treatments to regenerate her skin.  Plaintiff Baca watched those

representations prior to, and at the time of purchase, and understood them as representations and

warranties that her GloPRO was capable of skin regeneration.  Plaintiff Baca did not know and was

not made aware of the fact that the Product was not capable of this feature.  Plaintiff Baca relied on

the representations and warranties that her GloPRO Device was capable of skin regeneration in

deciding to purchase the Product.  Accordingly, those representations and warranties were part of

the basis of the bargain, in that she would not have purchased the Product on the same terms had

---

[11] *BeautyBio GloPRO Tool*, QVC, https://www.qvc.com/BeautyBio-GloPRO-Tool-with-2-Facial-%26-2-Body-Rollers-Auto-Delivery.product.A567731.html (last accessed July 20, 2023).

[12] *Id.*

[13] *Id.*  The QVC video displays "before and after" photographs of the body in the same sequence as photographs of the face but does not clarify that different needle lengths were used.  *Id.*  Further, BeatuyBio's CEO makes claims like "that's why the skin comes back firmer because it is *new* skin" (emphasis added). *Id.*

[14] *Id.*

she known those representations were not true.  In making her purchase, Plaintiff Baca paid a substantial price premium due to the false and misleading Skin Benefit Claims.  However, Plaintiff Baca did not receive the benefit of her bargain because her Device, in fact, was not capable of facial skin regeneration.  Plaintiff Baca also understood that in making the sale, her retailer was acting with the knowledge and approval of the Defendant and/or as the agent of the Defendant. Plaintiff Baca further understood that the purchase came with Defendant's representation and warranties that her Device could *create* firmer and smoother skin.

11.     **Defendant Beauty Biosciences, LLC** is a limited liability company headquartered in Dallas, Texas, with its principal place of business in Texas.  Beauty Biosciences manufactures, sells, and/or distributes GloPRO products, and is responsible for the advertising, marketing, trade dress, and packaging of GloPRO Devices.  Beauty Biosciences manufactured, marketed, and sold GloPRO Devices during the class period.  The planning and execution of the advertising, marketing, labeling, packaging, testing, and corporate operations concerning GloPRO Devices and Skin Benefit Claims were primarily carried out at Beauty Biosciences' headquarters and facilities within Texas.  The policies, practices, acts, and omissions giving rise to this action were developed in, and emanated from, Beauty Biosciences' headquarters in Dallas, Texas.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005 ("CAFA"), because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs.

13.     This Court has personal jurisdiction over Defendant because a substantial portion of the events giving rise to Plaintiff's claims occurred in this state, including Plaintiff's purchase of GloPRO Devices.

14.     Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District.  Also,

Plaintiff Linda Baca resides in this District and purchased Defendant's GloPRO Device in this District.

**FACTUAL ALLEGATIONS**

**A.      Background on Microneedling**

15.      Microneedling, also known as collagen induction therapy, is typically used as a cosmetic procedure (though it can also serve medical purposes) that works by using small needles to create precise, microscopic punctures in the skin to stimulate collagen production.[15]  The punctures are made by devices with needles that range from a length of 0.5 mm to 2.5 mm to reach the epidermis, the layer of skin where collagen is produced, to achieve a positive response to the treatment.[16]  The average epidermis depth in the face is 0.3 mm to 1 mm.[17]  The small wounds activate the body's healing response, causing the body to produce collagen and elastin to patch up the tiny injuries.[18]  Collagen and elastin significantly decline as we age[19] and are essential in helping skin look smooth and youthful.[20]  Microneedling reorganizes old collagen fibers in deeper layers of skin and lays down new collagen and elastin, leading to skin tightening.[21]  Microneedling is used for treating skin issues like fine lines and wrinkles, acne scarring, dark spots or patches, large pores, and reduced skin elasticity.[22]  Microneedling has been found effective for skin

---

[15] *Microneedling*, YALE MEDICINE, https://www.yalemedicine.org/conditions/microneedling (last accessed July 10, 2023).

[16] Sherman Chu, et al., *Safety Profile for Microneedling: A Systematic Review*, 47 Dermatologic Surgery 1249, 1249 (2021).

[17] *Id.*

[18] Nicole Hollimon, *Microneedling*, RADIANCE BY WEB MD (Jun. 25, 2020), https://www.webmd.com/beauty/what_is_microneedling.

[19] *Microneedling*, YALE MEDICINE, https://www.yalemedicine.org/conditions/microneedling (last accessed July 10, 2023).

[20] *Id.*

[21] Aashim Singh & Savita Yadav, *Microneedling: Advances and Widening Horizons*, Indian Dermatol Online, Jul.-Aug. 2016, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4976400/.

[22] *Microneedling*, YALE MEDICINE, https://www.yalemedicine.org/conditions/microneedling (last accessed July 10, 2023).

---

regeneration after multiple sessions: a study for skin treated with four in-office microneedling sessions one month apart showed up to a 400% increase in collagen and elastin after six months.[23]

16.     In-office microneedling procedures are performed by a dermatologist or trained professional using an electric tool to make the wounds in the skin.[24]  Patients are counseled prior to the procedure and explained the expected outcomes, delayed response, and need for multiple sittings since one session may not produce desired results, especially for deep wrinkles.[25]  Final results cannot be seen immediately because new collagen continues to be laid down for approximately three to six months after treatment as the skin regenerates.[26]

17.     A professional prepares the affected skin prior to the procedure with topical anesthesia.  The procedure can then last anywhere from ten to twenty minutes depending on the area being treated.[27]  During the treatment, needles on the electric device pulse up and down to puncture the skin and the needle length may be changed as needed for different areas being treated.[28]  Longer needles, for instance, that go deeper into the skin are required for deep scarring.[29] The patient is then advised to follow sun-protective measures[30] to protect the top layer of skin that has been disrupted and is vulnerable to sun exposure.[31]  There is virtually no downtime and the patient can resume their daily work the next day.[32]

---

[23] Aashim Singh & Savita Yadav, *Microneedling: Advances and Widening Horizons*, Indian Dermatol Online, Jul.-Aug. 2016, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4976400/.

[24] *Microneedling*, CLEVELAND CLNIC, https://my.clevelandclinic.org/health/treatments/23113-microneedling (May 23, 2022).

[25] Aashim Singh & Savita Yadav, *Microneedling: Advances and Widening Horizons*, Indian Dermatol Online, Jul.-Aug. 2016, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4976400/.

[26] *Id.*

[27] *Id.*

[28] *Microneedling*, CLEVELAND CLNIC, https://my.clevelandclinic.org/health/treatments/23113-microneedling (May 23, 2022).

[29] *Id.*

[30] Aashim Singh & Savita Yadav, *Microneedling: Advances and Widening Horizons*, Indian Dermatol Online, Jul.-Aug. 2016, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4976400/.

[31] Danielle Dooley, *The Ultimate Guide to Your Skin After Microneedling: Expert Tips and Products*, NEWBEAUTY (May 3, 2021), https://www.newbeauty.com/skincare-after-microneedling/9.

[32] Aashim Singh & Savita Yadav, *Microneedling: Advances and Widening Horizons*, Indian Dermatol Online, Jul.-Aug. 2016, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4976400/.

18.     As noted above, the length of the needle for microneedling matters to achieve desired visible results.  A needle length of at least 1.5 mm or 2.0 mm is recommended to treat acne scarring, where a needle length of 0.5 mm or 1.0 mm is recommended to treat aging skin and wrinkles.[33]  Several studies establish that collagen production for the face results from use of needle lengths ranging from 0.5 mm to 3.0 mm.[34]  Nanoneedles—needles between 0.1 mm to 0.25 mm—serve to help boost the absorption of serums and other skincare products.[35]  These needles do not reach skin depth necessary to address major skin concerns like wrinkles, but they can help with issues like enlarged pores.[36]

19.     Microneedling devices on the market offer differing technological features, such as tiny needles, tips, or pins on the surface of the device.[37]  For instance, the needles may be attached to a cylinder that is rolled across the skin, project from a flat surface that is "stamped" onto the skin, or arranged in a pattern on the tip of a pen-shaped instrument that is impressed into the skin.[38]

20.     Professional microneedling sessions can cost anywhere from $200 to $700, making at-home microneedling an appealing and accessible alternative.[39]  At-home microneedling devices

---

[33] *Id.*

[34] *See* Christine Wamsley et al., *A Single-Center Trial to Evaluate the Efficacy and Tolerability of Four Microneedling Treatments*, 41 Aesthetic Surgery Journal, (2021), https://academic.oup.com/asj/article/41/11/NP1603/6154362; *see also* Tina Alster et al., *Microneedling: A Review and Practical Guide*, 44 Dermatologic Surgery, (2018), https://journals.lww.com/dermatologicsurgery/Abstract/2018/03000/Microneedling__A_Review_and_Practical_Guide.11.aspx. Pragya Nair et al., *Microneedling: A Means of Collagen Induction Therapy*, 25 Journal of Dermatology and Dermatologic Surgery, Jul.-Dec. 2021 https://journals.lww.com/jdds/Fulltext/2021/25020/Microneedling__A_Means_of_Collagen_Induction.1.aspx. Asha Gowda et al., *A Systematic Review Examining the Potential Adverse Effects of Microneedling*, Journal of Clinical and Aesthetic Dermatology Jan. 2021. https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7869810/#B2.

[35] *Microneedling Depth Guide Through Areas & Concerns Being Treated,* PMU HUB, https://www.pmuhub.com/microneedling-depth-guide/ (last accessed July 5, 2023).

[36] *Id.*

[37] FDA, *Microneedling Devices*, https://www.fda.gov/medical-devices/aesthetic-cosmetic-devices/microneedling-devices (Nov. 9, 2020).

[38] *Id.*

[39] Michelle Konstantinovsky, *How At-Home Microneedling Can Reduce Scars, Spots, and Lines*, HEALTHLINE, https://www.healthline.com/health/beauty-skin-care/microneedling-at-home#TOC_TITLE_HDR_1 (last accessed July 6, 2023).

are available in stores and online for purchase at an average price of $20.[40]  Defendant's Product, shown in the photo below, is one such at-home device that sells for $199 USD.[41]



21.    At best, these at-home devices may provide skin exfoliation benefits and allow topical treatments to penetrate the skin better.  But according to a Yale Medicine dermatologist, any such microneedling device is "very unlikely to have any benefit for dermal remodeling [new collagen formation]."[42]  This is because at-home microneedling device needles typically are not long enough to penetrate the dermis, that is, the deeper layer of skin where collagen is found and produced.[43]  At-home microneedling devices are not meant to puncture the skin.[44]  While consumers can purchase at-home microneedling devices with needle lengths ranging from 0.25 mm

---

[40] *Id.*

[41] BEAUTY BIO, *GloPRO Facial Microneedling Tool*, https://beautybio.com/products/glopro-microneedling-regeneration-roller-tool (last accessed July 27, 2023).

[42] Colleen Moriarty, *Are DIY Beauty Treatments Worth Trying?* YALE MEDICINE (Jun. 7, 2018), https://www.yalemedicine.org/news/diy-skin-treatments-caution.

[43] COLUMBIA SKIN CLINIC, *What is Skin Collagen and Why is it Important?* (Jun. 21, 2022), https://columbiaskinclinic.com/cosmetic/skin-collagen/.

[44] Paula Ludmann, MS, *Microneedling Can Fade Scars, Uneven Skin Tone, and More*, AMERICAN ACADEMY OF DERMATOLOGY ASSOCIATION, https://www.aad.org/public/cosmetic/scars-stretch-marks/microneedling-fade-scars (Feb. 20, 2023).

to even 3 mm, the American Academy of Dermatology Association warns against at-home use with needle lengths that do penetrate the skin (needle lengths at 0.5 mm or longer[45]) because the devices may penetrate the skin in a way that causes injury or infection, rather than desired skin regeneration that can be achieved by a trained professional.[46]

### 1.    The Anti-Aging Industry

22.    Microneedling is part of the so-called "anti-aging" industry, a multi-billion dollar cosmetic and skin care market, mainly targeted at women, dedicated to providing methods to maintain youth.[47]  The name itself connotes a negative stance and sentiment around aging, a natural human process that has become medicalized and pathologized in recent decades, facilitated by technological advances in anti-aging approaches.  The social preoccupation and significance of anti-aging is evident in the rise of cosmetic procedures in adults over a certain age.  Indeed, as of 2018, 84% of adults who underwent minimally invasive cosmetic procedures and 81% of adults who underwent any cosmetic procedure were aged 35 or older.[48]

23.    Individuals, especially women, are inundated with social messaging through popular culture, social media, and advertisements perpetuating the stigma around aging and elevating youth as the ideal beauty standard.[49]  The target age for anti-aging products for women starts at around 25.[50]

---

[45] Hannah Russel, *At Home Skincare: Microneedling*, GLOWDAY (Apr. 11, 2020), https://www.glowday.com/blog/at-home-skincare-microneedling.

[46] AMERICAN ACADEMY OF DERMATOLOGY ASSOCIATION, *Microneedling: Experienced Hands Can Improve the Face*, (Feb. 16, 2018), https://www.aad.org/news/microneedling.

[47] Emily Stewart, *How The Anti-Aging Industry Turns You Into A Customer For Life*, VOX, (Jul. 28, 2022, 8:30 a.m. EDT), https://www.vox.com/the-goods/2022/7/28/23219258/anti-aging-cream-expensive-scam.

[48] Rebecca Pearl, *Ageism and Health in Patients Undergoing Cosmetic Procedures*, 39 Aesthetic Surgery Journal (Oct. 2018), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6587926/#CIT0011 (last accessed July 6, 2023).

[49] Emily Stewart, *How The Anti-Aging Industry Turns You Into A Customer For Life*, VOX, (Jul. 28, 2022, 8:30 a.m. EDT), https://www.vox.com/the-goods/2022/7/28/23219258/anti-aging-cream-expensive-scam.

[50] *Id*

---

24.     Everlasting youth is the ultimate—though unattainable—goal in the anti-aging industry, making it the perfect marketing strategy to gain customers.[51]  The strategy has proven effective: a 2021 survey found that women spend about $225,000 on physical appearance in a lifetime, a quarter of which goes toward the face.[52]

**B.     Defendant's Misrepresentations Regarding GloPRO Devices**

25.     Defendant prominently markets the GloPRO Devices' purported skin regeneration capabilities throughout its website.  For example, the Product page for the GloPRO Device highlights the ability to, among other things, "refine uneven texture, [and] smooth fine lines & wrinkles… in just 60 seconds a day![53]  The Product is further described as a "microneedling **regeneration** tool" that "amplifies skincare absorption and **creates firmer**, **smoother skin** in just 60 seconds a day."[54]

26.     For retailer websites where the Device is sold, such as Nordstrom and Ulta Beauty, the Device either features identical or nearly identical advertising to that of Defendant's own website.[55]  The retailer websites make the same claims as BeautyBio, stating the Device will provide "visibly firmer, smoother, and younger-looking" skin.[56]  The Nordstrom Product page also claims the Device "stimulates the skin's natural regenerative response" to create firmer skin.[57]

---

[51] *Id.*

[52] *Id.*

[53] BEAUTY BIO, *GloPRO Facial Microneedling Tool*, https://beautybio.com/products/glopro-microneedling-regeneration-roller-tool (last accessed July 27, 2023).

[54] *Id.* (emphasis added).

[55] *See* https://www.nordstrom.com/s/beautybio-get-that-glow-glopro-facial-microneedling-personalizedsort&breadcrumb=Home%2FAll%20Results&color=000 (last accessed July 21, 2023); *see also* https://www.ulta.com/p/get-that-glow-glopro-facial-microneedling-discovery-set-pimprod2030802?sku=2592882&AID=313779&PID=75421&CID=af_313779_75421_&clickId=1 9S3q-S4LxyNWaMzSlQr3zPQUkFz5N2GNWFoVc0&SubID=&utm_medium=affiliate&utm_source=7 5421&utm_campaign=Coupon&utm_content=core&irgwc=1 (last accessed July 21, 2023); BEAUTY BIO, *GloPRO Facial Microneedling Tool*, https://beautybio.com/products/glopro-microneedling-regeneration-roller-tool (last accessed July 27, 2023).

[56] *See, e.g.*, *supra* n.52.

[57] https://www.nordstrom.com/s/beautybio-get-that-glow-glopro-facial-microneedling-discovery-set-usd-233-value/6758204?origin=keywordsearch-

---

Sephora's online product page claims that the Device "supports collagen production,[58]" which is false.  A reasonable consumer buying the Product on any of these retailer websites would be misled by the purported Skin Benefit Claims.

27.     Defendant's online Product page also explains that the Device can "stimulate[] cells to restore volume" to the skin and "ignite" the "skin's natural rejuvenation response" as the Device's needles are passed over the skin.[59]  This statement alludes to the collagen production claims *i.e.*, the igniting of the body's response that creates collagen through healing microwounds. This process, however, is skin regeneration, not rejuvenation, and Defendant uses these words interchangeably in describing its Product without distinguishing between which of its tool attachments (*i.e.*, the body roller), are actually capable of producing such results.[60]  Defendant's irresponsible and imprecise use of "rejuvenation" and "regeneration" to describe the Product work to lump and confuse these respective claims together to mislead consumers about the Device's purported and actual capabilities.[61]

28.     Adding to the confusion, Defendant makes information regarding the needle lengths on the different interchangeable attachments it offers to the Device difficult for consumers to access.  Instead of placing this crucial information on the product page with information about the Device, Defendant requires consumers to click through a series of links and FAQ pages that are not obviously linked to the Product to find that the Device face attachment needles are only 0.3 mm in

---

personalizedsort&breadcrumb=Home%2FAll%20Results&color=000 (last accessed July 21, 2023).

[58] https://www.sephora.com/product/beautybio-get-that-glow-glopro-reg-facial-microneedling-discovery-set-P477961?skuId=2527596&om_mmc=ppc-MSN_357022452_1308418999048828_pla-4585375807235582_2527596____c&country_switch=us&lang=en&gclid=55373ec3114b1309dd565a743f496cb1&gclsrc=3p.ds&msclkid=55373ec3114b1309dd565a743f496cb1&utm_source=bing&utm_medium=cpc&utm_campaign=Sephora-USA-USD_SKIN_PLA_CONV_X_M-SHO_DESK_X_All_X_EN_NonBrand&utm_term=4585375807235582&utm_content=Gift%20Sets (last accessed July 21, 2023).

[59] BEAUTY BIO, *GloPRO Facial Microneedling Tool*, https://beautybio.com/products/glopro-microneedling-regeneration-roller-tool (last accessed July 27, 2023).

[60] *Id.*

[61] *Id.*

length.[62]  In fact, the longest needle length offered for the Device is 0.5 mm and it is for the body

attachment.[63]  Unless consumers jump through this hurdle of links, they have no way of knowing

whether the Device's needle length is indeed deep enough to penetrate the skin to provide the

stated regeneration benefits.

29.     Navigating to the "Benefits" portion of Defendant's website brings consumers to a

bulleted list of three benefits, including the "smooth appearance of fine lines and wrinkles."  Below

that, is a "Q & A" section that answers questions consumers may have.  In response to a question

asking whether GloPRO can be used with injections (like Botox) or fillers, BeautyBio claims that

"a lot of people use GloPRO in lieu of injectables and fillers," suggesting that the Device can

provide skin rejuvenation and regeneration results comparable to injectables.[64]

30.     Below the "Q & A" tab is a "Clinical Studies" tab that boasts results from a

consumer perception survey.  However, Defendant does not specify details of the survey such as

how large the survey was, whether other skincare products were used in conjunction with the

GloPRO Device, or what the control factors were, if any, *e.g.*, survey participants' age.  Defendant

seemingly relies on consumers' limited knowledge regarding clinical research in lumping its

consumer perception survey under the banner of "Clinical Studies."  Further, a consumer

perception survey differs from a clinical study in that the main goal of a consumer perception

survey is to discover opinions rather than factual data.[65]

---

[62] BEAUTY BIO, *How big are the needles on GloPRO?* https://beautybio.gorgias.help/en-US/how-big-are-the-needles-on-glopro-230203 (last accessed July 18, 2023).

[63] *Id.*

[64] BEAUTY BIO, *GloPRO Facial Microneedling Tool,* https://beautybio.com/products/glopro-microneedling-regeneration-roller-tool (last accessed July 27, 2023).

[65] Maggie Worth, *What Is a Perception Survey?* SMART CAPITAL MIND, https://www.smartcapitalmind.com/what-is-a-perception-survey.htm (Jun. 25, 2023).

**CLINICAL STUDIES**

**IN A GLOPRO® CONSUMER PERCEPTION SURVEY:**

**90%** felt skin had a renewed glow while using

**97%** agreed skin looked younger after using GloPRO®

**90%** considered GloPRO® an alternative to fillers

**93%** saw visible improvement in the overall appearance of skin

**93%** saw an improvement in the evenness of skin tone

**97%** felt the firmness of skin improved

### C.    Defendant's GloPRO Devices Are Not Capable of Providing Skin Regeneration Benefits

31.    Defendant claims the GloPRO microneedling device "stimulates skin to boost collagen production,"[66] yet the only needle lengths offered for the Device for face use are not longer than 0.3 mm..[67]  Collagen production is necessary to produce the skin regeneration benefits Defendant touts.  However, collagen production via microneedling is possible with needles at 0.5 mm or longer that are able to penetrate the epidermis.[68]  Numerous studies demonstrate that collagen production occurs when needles ranging from 0.5 mm to 3 mm are used for the face.[69]

---

[66] BEAUTY BIO, *GloPRO Facial Microneedling Tool*, https://beautybio.com/products/glopro-microneedling-regeneration-roller-tool (last accessed July 27, 2023).

[67] BEAUTY BIO, *How big are the needles on GloPRO?* https://beautybio.gorgias.help/en-US/how-big-are-the-needles-on-glopro-230203 (last accessed July 18, 2023).

[68] Aashim Singh & Savita Yadav, *Microneedling: Advances and Widening Horizons*, Indian Dermatol Online, Jul.-Aug. 2016, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4976400/.

[69] *See* Christine Wamsley et al., *A Single-Center Trial to Evaluate the Efficacy and Tolerability of Four Microneedling Treatments*, 41 Aesthetic Surgery Journal, (2021), https://academic.oup.com/asj/article/41/11/NP1603/6154362. *See also* Tina Alster et al., *Microneedling: A Review and Practical Guide*, 44 Dermatologic Surgery, (2018), https://journals.lww.com/dermatologicsurgery/Abstract/2018/03000/Microneedling__A_Review_and_Practical_Guide.11.aspx. Pragya Nair et al., *Microneedling: A Means of Collagen Induction Therapy*, 25 Journal of Dermatology and Dermatologic Surgery, Jul.-Dec. 2021 https://journals.lww.com/jdds/Fulltext/2021/25020/Microneedling__A_Means_of_Collagen_Induction.1.aspx. Asha Gowda et al., *A Systematic Review Examining the Potential Adverse Effects of Microneedling*, Journal of Clinical and Aesthetic Dermatology Jan. 2021. https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7869810/#B2.

---

32.    Defendant's device does not have needle lengths for face use that are capable of penetrating the epidermis, the layer of skin responsible for producing collagen.[70]  The Device's needle lengths for facial use are 0.3 mm, and thus not able to create punctures deep enough to stimulate the body's collagen production response.  Therefore, Defendant's Skin Benefit Claims are false and mislead reasonable consumers.

33.    The following table summarizes what needle lengths should be used depending on the concern to be treated:[71]

| Concerns | Needle length (millimeters) |
| --- | --- |
| shallow acne scars | 1.0 mm |
| deep acne scars | 1.5 mm |
| enlarged pores | 0.25–0.5 mm |
| postinflammatory hyperpigmentation (blemishes) | 0.25–0.5 mm |
| skin discoloration | 0.25–1.0 mm (start with the smallest) |
| sun damaged or sagging skin | 0.5–1.5 mm (a combination of both is ideal) |
| stretch marks | 1.5–2.0 mm (avoid 2.0 mm for home use) |
| surgical scars | 1.5 mm |
| uneven skin tone or texture | 0.5 mm |
| wrinkles | 0.5–1.5 mm |

34.    A needle length of at least 0.5 mm is needed to address wrinkles in the face.[72] Defendant claims that its Device smooths wrinkles when its needle length cannot reach deep enough into the skin to begin to address this skin concern.

35.    Defendant does not provide any disclaimer relevant to the incapability of the Device to actually boost collagen and elastin production given the 0.3 mm length of the needles for face use on the Device.  At best, Defendant's Device is only able to exfoliate the outermost layer of skin and reduce pore size—a result far from those promised.

---

[70] *See* Exhibit B, at 2.

[71] F.C. of Simple Skincare Science, *The Benefits of Dermarolling at Home: A Complete Guide*, HEALTHLINE, https://www.healthline.com/health/beauty-skin-care/dermarolling-how-it-works-before-and-after#how-to-choose (Apr. 14, 2023).

[72] *Id.*

36.     Prior to placing the GloPRO Devices into the stream of commerce and into the hands of consumers to purportedly provide skin regeneration benefits, Defendant knew or should have known that the GloPRO Devices would not be able to promote the skin's collagen production process.  Despite this inability, the pricing for the GloPRO Devices has remained the same, reflecting a price far more similar to a professional microneedling treatment, rather than the exfoliation tool the Device actually is.

37.     Defendant misrepresented, omitted, and concealed this stark inaccuracy to consumers, including Plaintiffs and Class members, by not including a disclaimer on the website, packaging, instructions, or otherwise warning of this inability to provide skin regeneration benefits.

### FED. R . CIV. P. 9(b) ALLEGATIONS

38.     Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To the extent necessary, as detailed in the paragraphs above and below, Plaintiff has satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity.

39.     **WHO**: Defendant made material omissions of fact in its advertising of the GloPRO Device by omitting that the device was not capable of providing significant or the advertised skin regeneration benefits.

40.     **WHAT**: Defendant's conduct was and continues to be fraudulent and deceptive because it has the effect of deceiving consumers into believing that the Device is able to boost collagen production and thus provide extensive skin benefits.  Defendant omitted from Plaintiff and Class Members that the GloPRO cannot boost collagen production and thus cannot provide skin regenerative benefits.  Defendant knew or should have known this information is material to all reasonable consumers and impacts consumers' purchasing decisions.  Yet, Defendant has omitted from GloPRO's labeling the fact that it cannot provide collagen related skin regeneration benefits.

41.     **WHEN**: Defendant omitted from the GloPRO's labeling the fact that the Device is not capable of boosting collagen production and providing regenerative skin benefits, continuously throughout the applicable relevant periods, including at the point of sale.

42.    **WHERE**: Defendant's omissions were made throughout its own marketing materials on its website and product pages of secondhand sellers for Defendant's Devices and were thus viewed by every purchaser, including Plaintiff, at the point of sale in every transaction.  The Devices are sold in brick-and-mortar stores and online stores nationwide.

43.    **HOW**: Defendant omitted from the Devices' labeling the fact that the Device is not capable of boosting collagen and providing related skin regenerative benefits.  And as discussed in detail throughout the Complaint, Plaintiff and Class Members read and relied on Defendant's omissions before purchasing the GloPRO Device.

44.    **WHY**: Defendant omitted from the GloPRO's labeling and marketing the fact that the Device was not able to boost collagen to provide skin regeneration benefits for the express purpose of inducing Plaintiff and Class Members to purchase the Devices at a substantial price premium or more than they would have paid had they known the truth about the GloPRO Devices.  As such, Defendant profited by selling the GloPRO Devices to at least thousands of consumers throughout the nation, including Plaintiff and the Class Members.

## CLASS ALLEGATIONS

45.    Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

46.    Plaintiff seeks to represent a class defined as all persons in the United States who, within the applicable limitations period purchased GloPRO Microneedling devices (the "Class").

47.    Specifically excluded from the Class are Defendant, Defendant's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendant, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or Defendant's officers and/or directors, the judge assigned to this action, and any member or the judge's immediate family.

48.    Plaintiff also seeks to represent a subclass consisting of Class Members who reside in California (the "California Subclass").

49.     Subject to additional information obtained through further investigation and discovery, the foregoing definitions of the Class and California Subclass may be expanded or narrowed by amendment or amended complaint.

50.     **Numerosity.**  The Class and California Subclass Members are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable.  Upon information and belief, Plaintiff reasonably estimates that there are hundreds of thousands of Members in the Class and California Subclass.  Although the precise number of Class and California Subclass Members is unknown to Plaintiff, it may be easily determined through discovery.

51.     **Commonality.**  Common questions of law and fact exist as to all Members of the Class and California Subclass and predominate over any questions affecting only individual Class or California Subclass Members.  The common legal and factual questions include, but are not limited to, the following:

    (a)     Whether Defendant made false and/or misleading statements to the consuming public concerning Skin Benefit Claims on the GloPRO Microneedling Device;

    (b)     Whether Defendant omitted material information to the consuming public concerning the actual skin regeneration capabilities of the GloPRO Microneedling Device;

    (c)     Whether Defendant's advertising for the GloPRO Microneedling Device is misleading and/or deceptive;

    (d)     Whether Defendant engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising and sale of the GloPRO Microneedling Devices;

    (e)     Whether Defendant's representations concerning the GloPRO Microneedling Devices were likely to deceive a reasonable consumer;

    (f)     Whether Defendant's omissions concerning the GloPRO Microneedling Device were likely to deceive a reasonable consumer;

(g) Whether Defendant represented to consumers that the GloPRO Microneedling Devices have characteristics, benefits, or qualities that they do not have;

(h) Whether Defendant advertised the GloPRO Microneedling Devices with intent to sell them not as advertised;

(i) Whether Defendant falsely advertised the GloPRO Microneedling Devices;

(j) Whether Defendant made and breached express and/or implied warranties to Plaintiff and Class and California Subclass Members about the GloPRO Microneedling Devices;

(k) Whether Defendant has been unjustly enriched based on its misrepresentations of the GloPRO Microneedling Devices;

(l) Whether Defendant's representations, omissions, and/or breaches caused injury to Plaintiff and Class and California Subclass Members; and

(m) Whether Plaintiff and Class and California Subclass Members are entitled to damages.

52. **Typicality.** Plaintiff's claims are typical of the claims of the other Members of the Class and California Subclass in that, among other things, all Class and California Subclass Members were deceived (or reasonably likely to be deceived) in the same way by Defendant's false and misleading advertising claims about the regenerative skin benefit capabilities of the GloPRO Microneedling Device. All Class and California Subclass Members were comparably injured by Defendant's wrongful conduct as set forth herein. Further, there are no defenses available to Defendant that are unique to Plaintiff.

53. **Adequacy.** Plaintiff will fairly and adequately protect the interests of the Members of the Class and California Subclass. Plaintiff has retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Class and California Subclass. Furthermore, Plaintiff has no interests that are antagonistic to those of the Class or California Subclass.

54. **Predominance.** Pursuant to Rule 23(b)(3), common issues of law and fact identified above predominate over any other questions affecting only individual Members of the Class and California Subclass. The Class and California Subclass issues fully predominate over any individual issues because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and labeling practices.

55. **Superiority.** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class and California Subclass Members are relatively small compared to the burden and expense of individual litigation of their claims against Defendant. It would, thus, be virtually impossible for Class or California Subclass Members to obtain effective redress on an individual basis for the wrongs committed against them. Even if Class or California Subclass Members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. It would also increase the delay and expense to all parties and the court system from the issues raised by this action. The class action device provides the benefits of adjudication of those issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

56. In the alternative, the Class and Subclass may also be certified because:

(a)    the prosecution of separate actions by individual Class and Subclass Members would create a risk of inconsistent or varying adjudications with respect to individual Class or Subclass Members that would establish incompatible standards of conduct for Defendant;

(b)    the prosecution of separate actions by individual Class and Subclass Members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class and Subclass Members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

(c)     Defendant has acted or refused to act on grounds generally applicable to the Class and to the Subclass as a whole, thereby making appropriate final declaratory and/or injunctive relief with respect to the Members of the Class and to the Members of each Subclass as a whole.

57.     Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual Members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

**COUNT I**
**Violation of California's Consumers Legal Remedies Act ("CLRA")**
**Cal. Civ. Code §§ 1750, *et seq*.**
**(On Behalf of the California Subclass)**

58.     Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

59.     Plaintiff brings this claim individually and on behalf of the Members of the proposed California Subclass against Defendant.

60.     Defendant violated California's Consumers Legal Remedies Act (the "CLRA") by engaging in the following unfair and deceptive business practices, as alleged above and herein:

(a)     Defendant violated Cal. Civ. Code § 1770(a)(5) by representing that the GloPRO Devices have characteristics that they do not have.

(b)     Defendant violated Cal. Civ. Code § 1770(a)(9) by advertising the GloPRO Devices with the intent not to sell them as advertised.

61.     The CLRA was enacted to protect consumers against such practices.  The CLRA applies to Defendant's conduct because the statute covers all sales of goods to consumers.

62.     Plaintiff and other Members of the California Subclass are "consumers" within the meaning of Cal. Civ. Code § 1761(d).  By purchasing Defendant's GloPRO Devices, Plaintiff and other Members of the California Subclass engaged in "transactions" within the meaning of Cal. Civ. Code §§ 1761(e) and 1770.

63.     Defendant Beauty Biosciences, LLC is a "person" within the meaning of Cal. Civ. Code § 1761(c).  Defendant's GloPRO Devices are "goods" within the meaning of Cal. Civ. Code § 1761(a).

64.     Defendant's unfair and deceptive business practices, as alleged above and herein, were intended to and did result in the sale of the GloPRO Devices.

65.     As a direct and proximate result of Defendant's unfair and deceptive business practices, as alleged above and herein, Plaintiff and other Members of the California Subclass suffered injury and damages in an amount to be determined at trial.

66.     On information and belief, Defendant's unfair and deceptive business practices, as alleged above and herein, were willful, wanton, and fraudulent.

67.     On information and belief, Defendant's officers, directors, and/or managing agents authorized the use of the false and misleading statements and material omissions regarding the Skin Benefit Claims of the GloPRO Devices, as alleged above and herein.

68.     On May 22, 2023, prior to the filing of this Complaint, Plaintiff's counsel sent Defendant a CLRA notice letter, which complies in all respects with California Civil Code § 1782(a).  The letter also provided notice of breach of express and implied warranties.  The letter was sent via certified mail, return receipt requested, advising Defendant that it was in violation of the CLRA and demanding that they cease and desist from such violations and make full restitution by refunding the monies received therefrom.  The letter stated that it was sent on behalf of Plaintiff and all other similarly situated purchasers.  Defendant has not responded to the letter.

69.     Plaintiff and the California Subclass Members seek damages and to enjoin the unlawful acts and practices described herein.

**COUNT II**
**Violation of California's Consumers Unfair Competition Law**
**Cal. Bus. & Prof. Code §§ 17200, *et seq*.**
**(On Behalf of the California Subclass)**

70.     Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

71.     Plaintiff brings this claim individually and on behalf of the Members of the

1    proposed California Subclass against Defendant.

2         72.    Defendant violated California's Unfair Competition Law ("UCL"), Cal. Bus. &

3    Prof. Code §§ 17200-17210, by engaging in unfair, fraudulent, and unlawful business practices.

4         73.    Plaintiff has standing to pursue this claim because she has suffered an injury-in-fact

5    and has lost money or property as a result of Defendant's unlawful, unfair, and fraudulent conduct.

6    Specifically, Plaintiff Baca purchased the GloPRO Device for her own personal use.  In doing so,

7    Plaintiff relied upon Defendant's false representations that the GloPRO Device would be able to

8    provide her with skin regeneration benefits when the device is incapable of regenerating skin.

9    Plaintiff spent money in the transaction that she otherwise would not have spent had she known the

10   truth about Defendant's advertising claims.

11        ***"Unfair" Prong of the UCL***

12        74.    A business act or practice is "unfair" under the UCL if it offends an established

13   public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to

14   consumers.  That unfairness is determined by weighing the reasons, justifications, and motives for

15   the business act or practice against the gravity of the harm to the alleged victims.

16        75.    Defendant's conduct constitutes an "unfair" business practice because, as alleged

17   herein, Defendant has engaged, and continues to engage, in a false, misleading, and deceptive

18   advertising campaign that misleads consumers into believing that the GloPRO Devices they

19   purchase will work to regenerate their skin when that is not true.

20        76.    Defendant's conduct, as alleged above and herein, was not motivated by any

21   legitimate business or economic need or rationale, other than to maximize its profits at the expense

22   of consumers who sought skin regenerative benefits.  No legitimate reasons, justifications, or

23   motives outweigh the harm and adverse impact of Defendant's conduct on members of the general

24   consuming public.  Defendant engaged, and continues to engage, in such conduct solely to

25   wrongfully extract monies from reasonable consumers seeking skin regenerative benefits,

26   including Plaintiff Baca, to which Defendant is not entitled.  Defendant could have, but has not,

27   used alternate means of effecting its legitimate business needs, such as by properly disclosing that

28   the GloPRO Devices will not provide skin regenerative benefits, by omitting the claim entirely, or

discounting the Product to appropriately account for the disparity in functionality.

77.    Defendant's conduct harms consumers and hurts market competition.  Defendant's conduct, as alleged herein, is immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiff and Members of the California Subclass because it violates consumers' reasonable expectations.  If Defendant had advertised its GloPRO Devices in a non-misleading fashion, Plaintiff and other California Subclass Members could have considered other options for purchasing skin regenerative products.

### *"Fraudulent" Prong of the UCL*

78.    A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

79.    Defendant has engaged, and continues to engage, in a "fraudulent" business practice by knowingly representing to consumers that the GloPRO Devices they purchase will provide them with skin regenerative benefits when they do not.  Defendant's conduct deceived Plaintiff and other California Subclass Members who purchased the GloPRO Devices in reliance on the Skin Benefit Claims, and it is highly likely to deceive members of the consuming public because, as alleged above, it violates consumers' reasonable expectations regarding skin regeneration.  Such a business practice lacks utility and functions only to maximize Defendant's profits at the expense of its customers.  The gravity of the harm to Plaintiff and other California Subclass Members, who lost money or property by paying for the GloPRO Devices, far outweighs any benefit of Defendant's conduct.

80.    Further, Defendant's fraudulent business practices will continue to mislead consumers because it will be impossible for consumers to know whether Defendant has stopped misrepresenting the functionality of the skin regeneration features of the GloPRO Devices until *after* consumers purchase such products.  Accordingly, the risk of harm to Plaintiff, Members of the California Subclass, and the consuming public is ongoing.

### *"Unlawful" Prong of the UCL*

81.    A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

82.     Defendant's business practices, as alleged herein, constitute violations of California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* (the "CLRA"). Specifically, Defendant has unlawfully marketed and advertised its GloPRO Devices in violation of Cal. Civ. Code §§ 1770(a)(5) and 1770(a)(9), as detailed above.

83.     Defendant's business practices also constitute violations of California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.* (the "FAL"), as detailed below.

84.     Defendant's unfair, fraudulent, and unlawful business practices, as enumerated and explained above and below, were the direct and proximate cause of financial injury to Plaintiff and other Members of the California Subclass.  Defendant has unjustly benefitted as a result of its wrongful conduct.  Accordingly, Plaintiff and the California Subclass seek an order of this Court that includes, but is not limited to, requiring Defendant to: (a) provide restitution to Plaintiff and other California Subclass Members; (b) disgorge all revenues obtained as a result of its violations of the UCL; (c) pay attorneys' fees and costs for Plaintiff and the California Subclass.

**COUNT III**
**Violation of California's False Advertising Law**
**Cal. Bus. & Prof. Code §§ 17500, *et seq.***
**(On Behalf of the California Subclass)**

85.     Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

86.     Plaintiff brings this claim individually and on behalf of the Members of the proposed California Subclass against Defendant.

87.     Defendant violated California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.* by publicly disseminating false, misleading, and/or unsubstantiated advertisements regarding their GloPRO Devices, as alleged above and herein.

88.     Plaintiff has standing to pursue this claim because she has suffered an injury-in-fact and has lost money or property as a result of Defendant's false advertising.  Specifically, Plaintiff purchased a GloPRO Device for her personal use.  In doing so, Plaintiff relied upon Defendant's false and misleading representations regarding the GloPRO Device's Skin Benefit Claims. Plaintiff spent money in the transaction that she otherwise would not have spent had she known the

truth about Defendant's advertising claims.

89.　　Defendant disseminated false and misleading advertisements to increase the sales of its GloPRO Devices.

90.　　Defendant knew or should have known that the advertisements for its GloPRO Devices were false and/or misleading.

91.　　Defendant knew or should have known that consumers, including Plaintiff and other Members of the California Subclass, would believe that the GloPRO Devices would be able to provide skin regenerative benefits.

92.　　Plaintiff and Members of the California Subclass have suffered harm as a result of Defendant's violations of the FAL because they paid monies for the GloPRO Devices that they would not have paid but for Defendant's false and misleading advertisements.

93.　　Accordingly, Plaintiff and Members of the California Subclass seek an order of this Court that includes, but is not limited to, requiring Defendant to: (a) provide restitution to Plaintiff and other California Subclass Members; (b) disgorge all revenues obtained as a result of its violations of the FAL; (c) pay attorneys' fees and costs for Plaintiff and the California Subclass.

**COUNT IV**
**Breach of Express Warranty**
**(On Behalf of the Class and California Subclass)**

94.　　Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all proceeding paragraphs of this complaint.

95.　　Plaintiff brings this claim individually and on behalf of the Members of the proposed Class and California Subclass against Defendant.

96.　　As the designer, manufacturer, marketer, distributor, and/or seller of the GloPRO Devices, Defendant issued an express warranty by representing to consumers at the point of purchase that the GloPRO Devices would provide skin regenerative benefits when this is not true. Defendant's representations were part of the description of the goods and the bargain upon which the goods were offered for sale and purchased by Plaintiff and Members of the Class and California Subclass.

97.     In fact, the GloPRO Devices do not conform to Defendant's Skin Benefit Claims because the GloPRO Devices cannot provide or promote skin regeneration.  By falsely representing the GloPRO Devices in this way, Defendant breached express warranties.

98.     As a direct and proximate result of Defendant's breach, Plaintiff and Members of the Class and California Subclass were injured because they: (1) paid money for GloPRO Devices that were not what Defendant represented; (2) were deprived of the benefit of the bargain because the GloPRO Devices they purchased were different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the GloPRO Devices they purchased had less value than Defendant represented.  Had Defendant not breached the express warranty by making the false representations alleged herein, Plaintiff and Class and California Subclass Members would not have purchased the GloPRO Devices or would not have paid as much as they did for them.

## COUNT V
### Breach of Implied Warranty
### (On Behalf of the Class and California Subclass)

99.     Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

100.    Plaintiff brings this claim individually and on behalf of the Members of the proposed Class and California Subclass against Defendant.

101.    Defendant routinely engages in the manufacture, distribution, and/or sale of GloPRO Devices and are merchants that deal in such goods or otherwise hold themselves out as having knowledge or skill particular to the practices and goods involved.

102.    Plaintiff and Members of the Class and California Subclass were consumers who purchased Defendant's GloPRO Devices for the ordinary purpose of such products.  In the alternative, Defendant marketed the GloPRO Devices, and Plaintiff and Members of the Class and California Subclass purchased the GloPRO Devices, for the specific purpose of using the skin regenerative feature enabled through collagen production, but received far less because the Product is incapable of providing such skin benefits.

103.     By representing that the GloPRO Devices would work, Defendant impliedly warranted to consumers that the GloPRO Devices were merchantable, such that they were of the same average grade, quality, and value as similar goods sold under similar circumstances.

104.     However, the GloPRO Devices were not of the same average grade, quality, and value as similar goods sold under similar circumstances.  Thus, they were not merchantable and, as such, would not pass without objection in the trade or industry under the contract description.

105.     As a direct and proximate result of Defendant's breach, Plaintiff and Members of the Class and California Subclass were injured because they paid money for GloPRO Devices that would not pass without objection in the trade or industry under the contract description.

**COUNT VI**
**Unjust Enrichment**
**(On Behalf of the Class and California Subclass)**

106.     Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

107.     Plaintiff brings this claim individually and on behalf of the Class and California Subclass.

108.     To the extent required by law, this cause of action is alleged in the alternative to legal claims, as permitted under Fed. R. Civ. P. 8.

109.     Plaintiff and Class and California Subclass Members conferred benefits on Defendant by purchasing the GloPRO Devices.

110.     Defendant was unjustly enriched in retaining the revenues derived from Plaintiff and Class and California Subclass Members' purchases of the GloPRO Devices.  Retention of those monies under these circumstances is unjust and inequitable because Defendant failed to disclose that the GloPRO Devices were not capable of collagen production resulting in the skin regenerative features as advertised, rendering them unfit for their intended purpose.  Those omissions caused injuries to Plaintiff and Class Members because they would not have purchased the GloPRO Devices if the true facts were known.

111.     Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and Class and California Subclass Members is unjust and inequitable, Defendant has been unjustly enriched in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of herself and all others similarly situated, seek judgment against Defendant as follows:

A.     Certifying the Class, and the California Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and California Subclass and Plaintiff's attorneys as Class Counsel to represent the Class and California Subclass Members;

B.     Declaring that Defendant's conduct violates the statutes referenced herein;

C.     Finding in favor of Plaintiff, the Class, and the California Subclass against Defendant on all counts asserted herein;

D.     Ordering Defendant to disgorge and make restitution of all monies Defendant acquired by means of the unlawful practices as set forth herein;

E.     Awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendant from continuing the unlawful practices as set forth herein, and directing Defendant to identify, with Court supervision, victims of its conduct and pay them all the money they are required to pay;

F.     Awarding Plaintiff and Class and California Subclass Members their costs and expenses incurred in the action, including reasonable attorneys' fees;

G.     Ordering Defendant to pay pre-judgment interest on all amounts awarded;

H.     Providing such further relief as may be just and proper.

## **JURY TRIAL DEMANDED**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.


Dated:  September 6, 2023              **BURSOR & FISHER, P.A.**

                                       By:    */s/ L. Timothy Fisher*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

L. Timothy Fisher (State Bar No. 191626)
Jenna L. Gavenman (State Bar No. 348510)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
          jgavenman@bursor.com


*Attorneys for Plaintiff*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, L. Timothy Fisher, declare as follows:

1.      I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court.  I am a Partner at Bursor & Fisher, P.A., counsel of record for Plaintiff Linda Baca in this action.  Plaintiff alleges that she is a citizen of California who resides in Gilroy, California.  I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2.      The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred in this District.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed at Walnut Creek, California, this 6th day of September, 2023.


                                                              */s/ L. Timothy Fisher*
                                                              L. Timothy Fisher